IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAWN CAVAGNETTO, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | No. 13 C 3805 |
| ) | |
| WILLIAM STOLTZ, ) | |
| ) | |
| Appellee. ) | |

MEMORANDUM OPINION AND ORDER

In this action, Dawn Cavagnetto appeals two summary judgment decisions the bankruptcy court entered in favor of her ex-husband, William Stoltz, in the adversary proceedings Stoltz initiated in Cavagnetto's Chapter 7 bankruptcy case. Cavagnetto asserts that the bankruptcy court erroneously concluded: (1) that Stoltz was entitled to summary judgment on his claims that three divorce-related debts Cavagnetto owed to him were nondischargeable under Sections 523(a)(5) and (a)(15) of the Bankruptcy Code, and (2) that Stoltz was entitled to summary judgment on Cavagnetto's counterclaim for indemnity and damages. For the following reasons, I affirm the bankruptcy court's judgment with respect to Stoltz's claims but reverse and remand for further proceedings on Cavagnetto's counterclaim.

I.

Because neither party alleges any error in the bankruptcy court's concise summary of the undisputed facts culled from over a decade of tangled litigation between them, I excerpt and adopt that summary below by way of background.[1]

> Stoltz and Cavagnetto were married on September 1, 1996. One child was born of that marriage. The parties acquired a parcel of real estate located in Berwyn, Illinois, which, from July 1998 to July 2002, they operated as a rental property (the "Berwyn Property").
>
> Stoltz's mother and step-father, Clare and Fred Barton (the "Bartons") loaned Stoltz and Cavagnetto the funds necessary to purchase the Berwyn Property and took a mortgage to secure their loan. Payments on the loan of $503.75 per month came due beginning on April 1, 1996. The Bartons did not record the mortgage until January 2, 2001.
>
> On January 4, 2000, Cavagnetto filed a petition for dissolution of marriage. In January 2004, the state court entered a judgment dissolving the marriage.
>
> The judgment of dissolution required Stoltz to pay child support and half of Cavagnetto's work-related daycare expenses. It required Cavagnetto to pay her daycare expenses in the first instance and then to seek reimbursement from Stoltz for his half.

---

[1] I have removed the Bankruptcy Court's embedded record citations and two explanatory footnotes to eliminate any confusion with my citations and observations here. I have also corrected the spelling of Stoltz's last name, which appears throughout the bankruptcy court's decision as "Stolz."

On May 16, 2000, Cavagnetto obtained a court order allowing her to sell the Berwyn Property. On July 10, 2000, the state court granted Stoltz's motion to vacate that order and reconsider the disposition of the Berwyn Property. Thereafter, in early 2002, Stoltz sought leave from the state court to sell the Berwyn Property. On February 1, 2002, the state court granted the motion and ordered that the Berwyn Property be listed for sale at fair market value.

Cavagnetto, however, refused to sign the sales agreement for the Berwyn Property, for which the state court held her in contempt and ordered her to pay Stoltz $2,202.50 in attorney's fees.

In response to Stoltz's motion to sell the Berwyn Property, Cavagnetto also filed a lawsuit seeking to quiet title and alleging that Stoltz and the Bartons committed fraud in connection with obtaining the mortgage. In that lawsuit, Cavagnetto argued that the Bartons' mortgage was invalid. That lawsuit was originally filed in the chancery division of the state court, but was then consolidated with the Divorce Proceedings.

After a trial on Cavagnetto's complaint, the state court found her complaint baseless and ordered her to pay Stoltz $1,500.00 as a sanction under Illinois Supreme Court Rule 137. Upon resolution of Cavagnetto's complaint, the Bartons received $101,292.08 in proceeds from the sale of the Berwyn Property as payment on their mortgage loan.

On August 23, 2006, the state court held a hearing on a motion for contempt filed by Stoltz in the Divorce Proceedings claiming that Cavagnetto had submitted false childcare invoices for reimbursement by Stoltz. The state court found that Cavagnetto had submitted false invoices and held her in contempt. On October 2, 2006, the state court entered judgment on Stoltz's motion and found that he had over-paid his share of daycare expenses in the amount of $5,952.85.

Rather than order Cavagnetto to pay Stoltz this amount, the state court gave Stoltz a $5,952.85

3

> credit against future daycare expenses. In addition to this credit, the state court ordered Cavagnetto to pay Stoltz and/or his attorneys $7,375.43 "as and for contempt findings."
>
> Cavagnetto filed her bankruptcy case on December 31, 2009.

*In re Cavagnetto*, 2012 WL 6585560 *1-*3 (Bkrtcy. N.D. Ill. Dec. 11, 2012).

The bankruptcy court concluded that the undisputed facts entitled Stoltz to summary judgment of his claims that the following debts were nondischargeable under Sections 523(a)(5) and (a)(15) of the Bankruptcy Code: (1) the $2,202.50 award of attorney's fees relating to Cavagnetto's refusal to sign a sales contract for the Berwyn Property (the "attorney's fees debt"), (2) the $7,375.43 contempt award relating to Cavagnetto's falsification of childcare receipts (the "contempt debt"), and (3) the $1,500 sanctions award relating to Cavagnetto's "baseless" suit to quiet title and for fraud (the "sanctions debt").

In an oral decision announced on April 23, 2013, the bankruptcy court granted summary judgment in Stoltz's favor on Cavagnetto's counterclaim, which sought indemnification in the amount of $5,243.39 (the amount she alleged her bankruptcy estate would have had in "surplus" if the Bartons had not filed their claim in her bankruptcy case), and

damages. *See id.* at *5 (summarizing Cavagnetto's counterclaim).

II.

This appeal challenges both of the bankruptcy court's summary judgment decisions. I have jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and review the bankruptcy court's grant of summary judgment de novo. *Dick v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If a party moving for summary judgment has properly supported his motion, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013) (internal quotation omitted).

Cavagnetto first challenges the bankruptcy court's grant of summary judgment of Stoltz's claims on the ground that the court improperly shifted the burden to her to establish that the debts at issue had been satisfied (i.e., that Cavagnetto had paid Stoltz), rather than require Stoltz to establish that the debts remained outstanding. This argument misses the mark because payment is an affirmative

defense that Cavagnetto was required to plead and prove by a preponderance of the evidence. *See* Fed. R. Bankr. P. 7008 (incorporating Fed. R. Civ. P. 8 by reference). Because Cavagnetto did not plead payment in her answer to Stoltz's adversary complaint, she may not assert it now as a basis for reversing the bankruptcy court's decision.[2] *See Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 235 (7th Cir. 1991) ("Failure to plead an affirmative defense results in a waiver of that defense.").

Cavagnetto next argues that the bankruptcy court erroneously concluded that the contempt debt and the sanctions debt were non-dischargeable under Sections 523(a)(5) and (a)(15) of the Bankruptcy Code.[3] I review the bankruptcy court's findings of fact for clear error and its legal conclusions de novo. *In re Berman*, 629 F.3d. 761, 766

---

[2] I note that in opposition to Stoltz's motion for summary judgment of his claim that another debt Cavagnetto allegedly owed him was nondischargeable, Cavagnetto presented evidence that the debt had been satisfied. Apparently overlooking Cavagnetto's failure to plead the affirmative defense of payment, and finding Cavagnetto's evidence undisputed, the bankruptcy court concluded that there was no triable issue with respect to that debt and entered judgment in Cavagnetto's favor. With respect to the debts at issue here, by contrast, Cavagnetto neither argued, nor offered any evidence to establish, that the debts had been satisfied, nor does she do so on appeal.

[3] Cavagnetto does not challenge the bankruptcy court's conclusion that the $2,202.50 attorney's fees debt was nondischargeable under § 523(a)(15).

6

(7th Cir. 2011) ("Where the trial court correctly states the law, its determination of whether the facts met the legal standard will be disturbed only if it is clearly erroneous."). *Id*.

Sections 523(a)(5) and (a)(15) provide:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
> ...
> (5) for a domestic support obligation;
> ...
> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]

11 U.S.C. § 523(a)(5) & (a)(15).

### A. The $7,375.43 "contempt debt"

The bankruptcy court characterized the state court's award of $7,375.43 "as and for contempt" for Cavagnetto's admitted falsification of daycare receipts as an award of "attorney's fees in favor of Stoltz and/or his attorney in the [divorce proceeding]." In holding that the debt was nondischargeable under § 523(a)(5), the court explained that "[m]ost courts have held that awards of attorney's fees incurred by a former spouse in divorce court are nondischargeable under § 523(a)(5).... This is so even where

7

the attorney's fees in divorce cases were awarded directly to the attorney and not to the debtor." *In re Cavagnetto*, 2012 WL 6585560, at *4-*5 (citing *Aldrich v. Papi (In re Papi)*, 427 B.R. 457, 463-64 (Bankr. N.D. Ill. 2010).

Cavagnetto argues that the bankruptcy court wrongly concluded that the contempt debt was a "domestic support obligation" because it was "intended as a punishment for litigation-related misconduct" and was "not in the nature of alimony or support." Appellee's Br. at 10-11 [DN 5]. Cavagnetto cites *In re Lopez*, 405 B.R. 382 (Bkrtcy. S.D. Fla. 2009), in which the bankruptcy court noted that "not every obligation created in connection with, or arising out of, a domestic matter, *ipso facto,* qualifies as a domestic support obligation." *Id.* at 384. The court went on to hold that the plain language of a state court order awarding attorney's fees "based upon and supported by the bad faith litigation misconduct of the former Wife, and [] not based upon the respective wages or ability of the parties to pay," contradicted the assertion that the award was for "support." *Id.* at 385. Cavagnetto seizes on this language to support her argument, but her reliance on it is misplaced.

To begin, the bankruptcy court's conclusion in this case was not based on a blanket rule that every obligation arising out of a domestic matter "*ipso facto*, qualifies"

under 532(a)(5), but instead on its factual finding that the specific obligation was "for services rendered in obtaining rulings in connection with their child's welfare." *In re Cavagnetto*, 2012 WL 6585560, at *5. This finding is consistent with the undisputed record. The contempt debt arises out of a judgment awarding attorney's fees that Stoltz incurred to enforce the support provisions of the parties' dissolution of marriage judgment that required them to split equally the costs of childcare.

The bankruptcy court's legal determination on this issue was likewise sound. When "the ultimate purpose of...a proceeding is to provide support for the child, the attorney's fees incurred inure to the child's support and therefore satisfy § 523(a)(5)." *In re Platter*, 140 F.3d 676, 682 (7th Cir. 1998). The substantive relief Stoltz obtained in the proceedings that led to the contempt sanction was reimbursement (in the form of a credit) for excess childcare payments. This underscores that the attorney's fees at issue satisfy the applicable standard, i.e., that the fees were for services rendered in proceedings whose "ultimate purpose" was to provide support for the parties' child, consistent with their respective domestic support obligations. Accordingly, I affirm the

bankruptcy court's judgment that the contempt debt of $7,375.43 is nondischargeable under 11 U.S.C. § 523(a)(5).

### B. The $1,500 "sanctions debt"

Cavagnetto asserts that the bankruptcy court erroneously concluded that the sanctions debt is nondischargeable pursuant to § 523(a)(15), which covers divorce-related debts other than "domestic support obligations." To recall, this debt arises from the state court's sanction of Cavagnetto for filing a frivolous lawsuit to quiet title and for fraud, which the state court consolidated with her petition for dissolution of marriage. The bankruptcy court noted that it was "undisputed that the attorney's fees awarded by the state court are a debt that was incurred by the debtor in the course of the Dissolution Proceeding." *In re Cavagnetto*, 2012 WL 6585560, at *5.

Cavagnetto insists that it was "pure happenstance" that the two suits were consolidated. But this interpretation is at odds with the record. As the state court explained, it consolidated the cases because Cavagnetto's suit to quiet title "involves a substantial asset of the parties which is either a non-marital or marital asset to be assigned by the court at the time of dissolution." R. at 65.[4]  The

---
[4] Although the record below was filed on this court's electronic docket, it is impossible to tell—even with the document displayed on the screen and a paper copy in

bankruptcy court's conclusion that the sanctions debt was incurred "in the course of the Dissolution Proceeding" is wholly consistent with the record. Accordingly, I affirm the bankruptcy court's judgment that the sanctions debt of $1,500 is nondischargeable under 11 U.S.C. § 523(a)(15).

C. Cavagnetto's Counterclaim

In her counterclaim, Cavagnetto asserted an injury in the amount of $5,243.39, "which represents an amount equal to what the surplus of her bankruptcy estate would have been if the Bartons had not filed their claim in her bankruptcy case." *In re Cavagnetto*, 2012 WL 6585560, at *5. Cavagnetto alleged further damages in the amount of $26,281.29, "an amount equal to the pro-rata share that the trustee would be required to pay on the Bartons' claim." *Id.* Cavagnetto's theory is that Stoltz had a continuing obligation, pursuant to a state court order of July 10, 2000, to indemnify her for at least some liability arising from the Bartons' claim against her for a mortgage deficiency. Indeed, on that date, the state court vacated its previous order allowing Cavagnetto to sell the Berwyn Property and instead ordered Stoltz, over Cavagnetto's objection, to begin managing the property. As a condition of allowing Stoltz to operate the Berwyn Property, the court

hand—where on the electronic docket particular pages from the record can be found. Accordingly, when I am unable to cite to a docket number, I follow the parties' lead and cite only to the page in the record ("R.").

ordered that Stoltz "shall hold [Cavagnetto] free, harmless and indemnified against any losses the marital estate may incur during the time of his management and control." R. at 819 ("the Indemnification Clause").

In its oral ruling disposing of Cavagnetto's counterclaim, the bankruptcy court held:

> Because [Cavagnetto's] counterclaim is premised upon her argument that the Bartons' claim should be disallowed, and because that argument has twice been rejected by final orders of this Court and in substance ruled on by the state court, Stoltz is entitled to summary judgment on [Cavagnetto's] counterclaim as a matter of law.
>
> In addition, because distribution has presumably already been made pursuant to the amended final report and accounting, [Cavagnetto's] counterclaim is also moot.
>
> But even if [Cavagnetto] were able to overcome these insurmountable hurdles, her other arguments would not be sufficient to warrant the denial of Stoltz's summary judgment motion.

R. 1024-1025.

The court went on to explain that Cavagnetto's counterclaim arose under the Indemnification Clause, and that pursuant to the state law doctrine of merger, the divorce dudgment superseded Stoltz's obligations under the Indemnification Clause. I cannot, however, affirm the bankruptcy court's ruling on any of the grounds it articulates.

To begin, the bankruptcy court's unexplained statement that the counterclaim "is premised upon her argument that the Bartons' claim should be disallowed" appears to misapprehend the theory of Cavagnetto's counterclaim, at least insofar as it can be discerned from the face of her allegations. Indeed, Cavagnetto's counterclaim explicitly assumes that the Bartons' claim *will* be allowed. She alleges that "[*t*]*o the extent that this Court allows the Barton claim*, [Cavagnetto] has been damaged in the amount of…." R. 142 at ¶¶ 46, 47. Accordingly, the counterclaim Cavagnetto asserts is not premised on the disallowance of the Bartons' claim.

To the extent any arguments Cavagnetto may have raised, unsuccessfully, in objection to the Bartons' claim are the same as those she asserts—or intends to assert—in support of her counterclaim, neither the bankruptcy court's terse ruling, nor the record before me, provides an adequate basis on which to affirm the court's apparent conclusion that Cavagnetto's counterclaim is precluded. First, it is not clear whether the bankruptcy court rested its conclusion on principles of res judicata or collateral estoppel (both of which doctrines were raised in the parties' briefs). If the former, I cannot affirm because "[t]he Supreme Court has held that *res judicata* does not apply in bankruptcy

13

discharge exception proceedings." *Meyer v. Rigdon*, 36 F.3d 1375, 1378 n.1 (7th Cir. 1994) (citing *Brown v. Felsen*, 442 U.S. 127 (1979)). Second, although "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)," *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991), the record does not establish that the issues raised in Cavagnetto's counterclaim were "actually litigated and determined" in any prior litigation. *See Housing Auth. for LaSalle County v. YMCA*, 461 N.E.2d 959, 962 (Ill. 1984). Moreover, the divorce judgment was entered after Cavagnetto defaulted on Stoltz's counter-petition for dissolution, and Illinois "subscribes to the majority view that a default judgment cannot form the basis for collateral estoppel." *In re Nikitas*, 326 B.R. 127, 131 (Bankr. N.D. Ill. 2005) (discussing relevant precedents).[5]

Nor do I find adequate support in the record—or in the law—for the bankruptcy court's conclusion that Cavagnetto's counterclaim is "moot" on the basis that "distribution has presumably already been made." The bankruptcy trustee's final report shows that Cavagnetto's assets were distributed on January 12, 2013 (i.e., shortly after the bankruptcy

---

[5] *Cf. In re Catt*, 368 F.3d 789, 791 (7th Cir. 2004) (noting that "a significant minority of states, Indiana among them, allow findings made in default proceeding to collaterally estop, provided that the defaulted party could have appeared and defended if he had wanted to").

14

court granted summary judgment for Stoltz on his adversary claims). *See In re Cavagnetto*, No. 09 B 49694, Dkt. No. 80 at Ex. 9 (Bankr. N.D. Ill.). It is perplexing that the trustee did not wait until the *entire* adversary proceeding—including Cavagnetto's counterclaim—had been resolved before distributing the assets of her estate. *See In re J.S. II, LLC*, 2009 WL 889988, at *2 (N.D. Ill. 2009) ("Until [adversary] claims are resolved, the main bankruptcy proceeding cannot be finalized and the estate assets cannot be distributed."). That the assets of Cavagnetto's estate were apparently distributed prematurely (a fact over which Cavagnetto presumably had no control), does not strike me as an equitable basis for disposing of her counterclaim as "moot."

Moreover, as a matter of law, Cavagnetto's counterclaim is not moot simply because the bankruptcy trustee already distributed her estate's assets to creditors. "A case is moot if there is no possible relief which the court could order that would benefit the party seeking it." *In re Envirodyne Indus., Inc.*, 29 F.3d 301, 304 (7th Cir. 1994). I cannot say, on the record before me, that that is the case here. It may be possible, for example, for the bankruptcy court to reopen Cavagnetto's estate for the purpose of receiving additional funds to which the estate may be

15

entitled for distribution to creditors. *See Ruhl v. HSBC Mortgage Services, Inc.*, 399 B.R. 49, 55 (E.D. Wis. 2008). "This is so even though [Cavagnetto's debts] have been discharged and the trustee[] ha[s] completed making payments to creditors…. So long as it is theoretically possible for a court to grant some form of relief…a case is not moot for purposes of Article III." *Id*. (citing cases). Because I cannot discern from the record that there is no possible relief to which Cavagnetto or her estate may be entitled,[6] I decline to affirm the bankruptcy court's decision based on mootness.

Finally, the bankruptcy court's conclusion that the Indemnification Clause merged into the Final Judgment of Dissolution does not survive scrutiny. The bankruptcy court explicitly agreed with Stoltz's argument on this issue, which relied on *In re Marriage of Simmons*, 581 N.E. 2d 716 (Ill. App. Ct. 1991) and *In re Marriage of Dunseth*, 633 N.E. 2d 82 (Ill. App. 1994). Neither case supports the application of merger on the facts here.

In *Simmons*, the court declined to enforce a temporary order of visitation after a final visitation order was entered. The court explained, "a temporary order is

---

[6] I note that while Cavagnetto did not expressly plead her counterclaim on behalf of her estate, the claim seeks relief both for herself and for her estate.

16

provisional in character and continues only during the pendency of the action. When the action becomes final, the temporary order has fulfilled its purpose and is superseded by the provisions of the final decree." 581 N.E. 2d at 718. Two obvious distinctions between this case and *Simmons* stand out. First, unlike the order in *Simmons*, there is no evidence to suggest that the Indemnification Clause is "temporary." The Indemnification Clause provides that Stoltz "shall hold [Cavagnetto] free, harmless and indemnified against any losses the marital estate may incur during the time of his management and control." R. 819. Nothing in this provision indicates that it is intended to be temporary, or that Cavagnetto's right to enforce it will expire at any particular time. Second, while the final order in *Simmons* contained provisions governing the same substantive matter as the temporary order—visitation—the final judgment of dissolution in this case does not contain any provisions allocating liability for losses to the marital estate during Stoltz's management.

Moreover, there is no dispute that the marital estate did, in fact, incur losses during the time Stoltz managed and controlled the Berwyn Property, including as a result of Stoltz's failure to make timely property tax payments and failure to make certain payments on the Bartons' mortgage.

17

These losses ultimately increased Cavagnetto's liability (and the liability of her bankruptcy estate) to the Bartons. This liability plainly survived entry of the parties' final divorce judgment as evidenced by the Bartons' vigorous efforts to collect on the mortgage note from Cavagnetto alone. It makes little sense to conclude that an order intended to indemnify Cavagnetto against Stoltz's mismanagement of their marital property expires upon their divorce, even though Cavagnetto's own liability resulting from that mismanagement persists.

Nothing in *Dunseth* compels a contrary conclusion. Stoltz relies on that case for the proposition that "[o]nce the final order is entered it must be assumed that the trial court has thereby adjusted for any inequity in its temporary orders." 633 N.E. 2d at 92. As noted above, the Indemnification Clause is not, by its terms, a "temporary order," nor does anything in the final divorce order entered in this case suggest that the court "adjusted" or even addressed the subject matter of the Indemnification Clause.

### III.

For the foregoing reasons, the bankruptcy court's grant of summary judgment in Stoltz's favor on his claims is affirmed, and its grant of summary judgment in Stoltz's

18

favor on Cavagnetto's counterclaims is reversed and remanded for further proceedings.

**ENTER ORDER:**

_____
Elaine E. Bucklo
United States District Judge

Dated: November 4, 2013